| | |
|---|---|
| Thomas E. Norman, III, ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | |
| v. ) | Case No.: 3:14-CV-285-PLR-HBG |
| ) | |
| United States Department of Labor, ) | |
| ) | |
|     *Defendant*. ) | |

## Memorandum Opinion

Thomas Norman, III worked at the Department of Energy's Y-12 plant in Oak Ridge, Tennessee for nearly 30 years. In that time he worked as a machinist, a machine specialist, and a janitor. In 2007, Mr. Norman was diagnosed with beryllium sensitivity relating to his work at Y-12, and he was awarded monitoring and medical benefits accordingly. In February 2013, Mr. Norman filed a claim alleging that his beryllium sensitivity has progressed to chronic beryllium disease. The Department of Labor's Office of Workers' Compensation Programs (the "OWCP") denied Mr. Norman's claim, concluding that the diagnosis provided by Mr. Norman's doctor may be flawed, and therefore, Mr. Norman had not submitted sufficient diagnostic evidence to support a diagnosis of chronic beryllium disease. Mr. Norman now challenges the OWCP's decision, asserting that it was arbitrary and capricious. For the reasons that follow, Mr. Norman's motion for summary judgment will be granted. The Department of Labor's cross motion for summary judgment will be denied.

i.

The Energy Employees Occupational Illness Compensation Program Act of 2000, 42 U.S.C. § 7384 *et seq.*, (the "EEOICPA") provides for compensation to covered employees who

have illnesses caused by exposure to certain toxic substances in the course of their work at the Department of Energy (the "DOE"). Part B of the EEOICPA provides for compensation in the form of a lump-sum payment of $150,000 and medical benefits for designated occupational illnesses caused by exposure to beryllium. 42 U.S.C. §§ 7384l-7384w-1. Two of the compensable illnesses under Part B are beryllium sensitivity and chronic beryllium disease ("CBD"). 42 U.S.C. § 7384l(8)(a) and (b). A covered beryllium employee with only beryllium sensitivity is not entitled to monetary compensation, but is instead entitled to beryllium sensitivity monitoring. 42 U.S.C. § 7384s(a). If the beryllium sensitivity progresses to CBD, the covered employee then becomes eligible for the monetary compensation. *Id.*

A claimant has the burden of proof to establish that he has CBD. That burden may be satisfied by submitting medical evidence of beryllium sensitivity and "lung pathology consistent with chronic beryllium disease." 42 U.S.C. § 7384l(13)(A). Lung pathology consistent with chronic beryllium disease could include a lung biopsy showing granulomas or a lymphocytic process consistent with CBD. *Id.* Chapter 2.1000.7b of the EEOICPA procedure manual states that a "lymphocytic process consistent with CBD" may be demonstrated by a bronchoalveolar lavage (a "BAL") "showing an increase in the percentage of lymphocytes in the differential cell count (i.e., typically >10% lymphocytes is considered a BAL lymphocytosis)."

Part E of the EEOICPA provides additional compensation to DOE contractor employees for permanent impairment or wage-loss due to a covered illness resulting from work-related exposure to toxic substances at a DOE facility. 42 U.S.C. §§ 7385s - 7385s-15. The OWCP must find that a claimant has contracted a covered illness under Part E if it has already been determined that the employee is entitled to compensation under Part B for the same illness. 42 U.S.C. § 7385s-4(a).

2

In 2007, Mr. Norman was diagnosed with beryllium sensitivity due to his work at Y-12. Mr. Norman is a "covered beryllium employee" under the EEOICPA, and he submitted a claim under Parts B and E of the EEOICPA with the OWCP. Mr. Norman's claim was accepted, and he was awarded monitoring and other medical benefits. About six years later, Mr. Norman filed a new claim under Parts B and E, asserting that his previously accepted beryllium sensitivity had progressed to CBD. The OWCP responded by letter describing the statutory criteria he needed to establish to receive benefits under Parts B and E. Accordingly, Norman submitted medical records including a surgical pathology report and a cytology report from Dr. Joseph B. Eatherly. In the pathology report, Dr. Eatherly stated that he found no evidence of granulomas or malignancy, but in the cytology report, he stated that Mr. Norman's differential cell count showed 15 percent lymphocytes, "indicating a mild lymphocytosis suggesting sensitization or chronic inflammation." The cytology report was based on a sample of less than 1ml clear fluid obtained by a BAL.

After receiving Mr. Norman's medical documentation, the OWCP referred the claim to Dr. Stuart M. Brooks, a contract medical consultant, and asked him to address two specific issues: (1) whether the surgical pathology report showed granulomas; and (2) whether the cytology report showed a lymphocytic process consistent with CBD. Dr. Brooks reported that the surgical pathology report did not mention granulomatous inflammation. In reference to the cytology report, Dr. Brooks stated as follows:

> [T]here may have been a technical error in analyzing [the] cytological material. Mr. Norman's cytological analysis was made on less than 1 ml of lung fluid. A meaningful analysis of bronchoalveolar lavage fluid typically requires obtaining a minimum of 5 ml of fluid; the optimal volume is 10-20 ml. Even without this technical difficulty, the recommendations promulgated by the American Thoracic Society (ATS) emphasizes that a lymphocytic subset analysis is imperative for cases recording only borderline lymphocytosis (i.e. 15%) such as observed with Mr. Norman.

3

Dr. Brooks concluded that it was "not at least as likely as not that the findings are consistent with CBD." After concluding that Dr. Brooks's report constituted the "weight of the medical evidence," the OWCP recommended denying Mr. Norman's CBD claims on the grounds that the medical evidence did not establish a diagnosis of CBD.

In response, Mr. Norman submitted a medical report from Dr. John Ellis acknowledging Dr. Brooks's assertion that a larger sample of BAL fluid is desirable. Nevertheless, Dr. Ellis asserted that this was "irrelevant to the requirements, as there is no mention of any minimal volume for the laboratory sample" in the EEOICPA procedure manual.

In the end, the OWCP concluded that Dr. Brooks's opinion regarding the reliability of the cytology testing outweighed Mr. Norman's medical reports. Accordingly, Mr. Norman's claims for CBD under Parts B and E were denied. Mr. Norman brought this civil action on June 20, 2014, and presently before the Court are cross motions for summary judgment based on the administrative record.

ii.

The Administrative Procedures Act's arbitrary and capricious standard applies in this case. 5 U.S.C. § 706(2)(A). This standard is used for judicial review of informal agency actions, including agency adjudications where no hearing or formal evidentiary findings of fact are required by statute. *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The arbitrary and capricious standard is "the most deferential standard of judicial review of agency action, upholding those outcomes supported by a reasoned explanation, based upon the evidence in the record as a whole." *Michigan Bell Tel. Co. v. MCI Metro Access Transmission Servs., Inc.*, 323 F.3d 348, 354 (6th Cir. 2003). Accordingly, the agency's decision cannot be reversed absent "a clear error of judgment or the [agency's] failure to consider relevant factors or aspects of the problem." *Id.*

4

Put another way, an agency's decision will be considered arbitrary and capricious only when the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation of its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Henry Ford Health Sys. v. Shalala*, 233 F.3d 907, 922 (6th Cir. 2000) (internal quotation omitted).

iii.

The Department of Labor's decision denying Mr. Norman's claim for CBD benefits under Parts B and E of the EEOICPA is not supported by a reasonable explanation. The requirements for establishing a claim for CBD under the EEOICPA are straightforward. Under the EEOICPA, CBD may be established by showing beryllium sensitivity together with lung pathology consistent with CBD, including a lung biopsy showing granulomas *or* a lymphocytic process consistent with CBD. The EEOICPA procedure manual states that a lymphocytic process consistent with CBD can be demonstrated by a bronchoalveolar lavage "showing an increase in the percentage of lymphocytes in the differential cell count (i.e. typically >10% lymphocytes is considered a BAL lymphocytosis)."

There is no dispute that Mr. Norman suffers from beryllium sensitivity. Therefore, the only consideration before the DOL and now before this Court is whether or not Mr. Norman has demonstrated lung pathology consistent with CBD. He has. Mr. Norman's medical records showed 15 percent lymphocytes—fifty percent more than what is "typically" sufficient according to the DOL's EEOICPA procedure manual.

In support of its decision to deny benefits, the Department of Labor asserts that the word "typically" in the EEOICPA procedure manual gives it discretion to find that the medical report

does not prove the existence of a lymphocytic process. In this case the DOL argues that it exercised that discretion primarily based on the small sample size obtained in Mr. Norman's BAL. Dr. Brooks's report, which the DOL found to be more credible than Mr. Norman's, also considered the fact that there were no granulomas in Mr. Norman's lungs and the fact that more lymphocytes would provide stronger evidence of a lymphocytic process consistent with CBD.

The government may be correct that it has the discretion to weigh the probative value of a medical opinion, but it must do so with a reasoned decision. "Agencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departures." *Big Horn Coal Co. v. Temple*, 793 F.2d 1165, 1169 (10th Cir. 1986) (quoting *National Conservative Political Action Committee v. FEC*, 626 F.2d 953, 959 (D.C. Cir.1979)).

The government's decision to discredit the results of Mr. Norman's BAL was not rationally explained. Dr. Brooks's opinion acknowledges that Mr. Norman's case is one "where there is a relatively borderline lymphocytosis." Nevertheless, Dr. Brooks states that a finding of 25 percent lymphocytes would have represented "stronger evidence" for a diagnosis of CBD. The EEOICPA does not require a finding of 25 percent lymphocytes, and Dr. Brooks's suggestion that such a finding would be "stronger evidence" for the purpose of diagnosing CBD is irrelevant. The EEOICPA simply requires a showing of a lymphocytic process, which the EEOICPA's procedures manual states is typically demonstrated by a showing of 10 percent lymphocytes. Mr. Norman's 15 percent lymphocytes exceed what is typically sufficient by 50 percent. If the DOL concludes that a higher threshold of lymphocytic activity should be required to be eligible for CBD benefits under Part B, it can amend its procedure manual accordingly. Until then, "an agency's failure to follow its own regulations and procedures is arbitrary and capricious." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1368 (11th Cir. 2008).

6

Dr. Brooks's observation that no granulomas were present in Mr. Norman's lungs is also irrelevant. The EEOICPA does not require Mr. Norman to show the existence of granulomas *and* a lymphocytic process. The disjunctive "or" in the EEOICPA makes either showing sufficient to establish CBD. Mr. Norman never claimed to have granulomas, so the DOL's inquiry into the presence of granulomas was beside the point.

Finally, the DOL does not give a reasoned explanation for its decision to reject the cytology report on the basis of sample size. The parties agree that a 5ml or larger sample size would have been ideal, but the DOL articulates no reason whatsoever for concluding that a smaller sample size is unacceptable. The DOL never states that the lymphocytes in Mr. Norman's lungs cannot accurately be measured with 1ml of fluid. Likewise, Dr. Brooks also failed to explain why the smaller sample size is problematic. Instead, he states that "there *may* have been a technical error in analyzing [Mr. Norman's] cytological material," and that "[a] meaningful analysis of bronchoalveolar lavage fluid *typically* requires obtaining a minimum of 5 ml of fluid." (emphasis added). Dr. Brooks does not claim that there *actually* was a technical error, nor does he explain the effect such an error would have had on Mr. Norman's test results. Without offering a reasoned explanation (or any explanation at all) for why a smaller sample size cannot accurately measure Mr. Norman's lymphocytes, the DOL's rejection of Mr. Norman's medical evidence is not reasoned or supported by the administrative record.

Mr. Norman has demonstrated the elements necessary to establish a valid CBD claim under Part B of the EEOICPA. His beryllium sensitivity diagnosis is unchallenged, and he presented evidence of a lymphocytic process in excess of the example given by the EEOICPA procedure manual. The DOL's reliance on other factors not required by the EEOICPA (i.e. the lack of granulomas) and its rejection of Mr. Norman's cytological report based on the mere

7

possibility of a technical error (and without explanation of how that error would discredit Mr. Norman's results) is arbitrary and capricious. Furthermore, because Mr. Norman has demonstrated his entitlement to benefits under Part B, the OWCP must also find that he has contracted CBP for the purposes of Part E. 42 U.S.C. § 7385s-4(a).

iv.

For these reasons, Mr. Norman's motion for summary judgment [R. 9] is **Granted**. The Department of Labor's motion [R. 13] is **Denied**. The Department of Labor's decision denying Mr. Norman benefits under Parts B and E of the EEOICPA is **Reversed**, and this matter is **Remanded** to the OWCP to award benefits consistent with this opinion.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE